UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-23451-GAYLES

**BRIT UW LIMITED,**

        **Plaintiff,**

**v.**

**FLYTEC COMPUTERS, INC. d/b/a
FLYTEC USA and FLYTEC
COMPUTERS SA,**

        **Defendants.**
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Complaint and Compel Joinder of Necessary Parties and for More Definite Statement (the "Motion"). [ECF No. 12]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is denied.

**I.    BACKGROUND[1]**

Plaintiff Brit UW Limited ("Brit") seeks to rescind a Marine Cargo Stock Throughput Insurance Policy (the "Marine Policy") issued to Defendants Flytec Computers, Inc. d/b/a Flytec USA, and Flytec Computers SA (collectively, "Flytec"). As the Marine Policy was underwritten in the Lloyd's of London ("Lloyd's") insurance market, the Court begins with a brief description of that market.

---

[1] The Court must accept Plaintiff's allegations as true for purposes of this motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

1

### A. The Lloyd's Insurance Market

Lloyd's "is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market." *Underwriters at Lloyd's London v. Osting-Schwinn*, 613 F.3d 1079, 1083 (11th Cir. 2010). The Eleventh Circuit has detailed the Lloyd's market structure as follows:

> Lloyd's itself does not insure any risk. Individual underwriters, known as "Names" or "members," assume the risk of the insurance loss. Names can be people or corporations; they sign up for certain percentages of various risks across several policies.
>
> . . .
>
> Names underwrite insurance through administrative entities called syndicates, which cumulatively assume the risk of a particular policy. . . . As mere administrative structures, the syndicates themselves bear no risk on the policies that they underwrite; the constituent Names assume individual percentages of underwriting risk. The Names are not liable for the risks that the other Names assume.
>
> . . .
>
> Crucially, each Name's liability is several and not joint. Thus, Lloyd's Act of 1982 provides that an "underwriting member shall be a party to a contract of insurance underwritten at Lloyd's only if it is underwritten with several liability, each underwriting member for his own part and not one for another, and if the liability of each underwriting member is accepted solely for his own account." Lloyd's Act, 1982, c.14 § 8(1).
>
> . . .
>
> Through contractual agreement, the other Names that are members of the underwriting syndicates on the policy remain liable for their proportional share of any adverse judgments. . . . Thus, the legal relationship between the Names and the insured is a vertical one: it is the individual Names, not the syndicate, who are directly liable in the event of loss, as if each Name had a contract with the insured.

*Osting-Schwinn*, 613 F.3d at 1083-84.

### B. The Marine Policy, Application, and Purported Misrepresentations

On March 14, 2023, Flytec submitted a Marine Cargo and Stock Application (the "Application") to procure the Marine Policy. According to Brit, Flytec made misrepresentations in the Application including that (1) the average value of inventory at one of its storage locations ("Location 7") was $2.4 million, when it was actually $130 million, and (2) Location 7 was a completed 8-story building, when it was actually an unfinished 25-story building with haphazard electrical wiring. [ECF No. 1].

Based on Flytec's representations in the Application, Brit and seven other subscribing underwriters issued the Marine Policy, effective May 21, 2023, to May 21, 2024. Brit, through syndicate Brit 2897, subscribed to 15% of the Marine Policy. [ECF No. 1-1 at 34]. The Marine Policy provides in pertinent part:

> The liability of an Insurer under this contract is several and not joint with other Insurers party to this contract. An Insurer is liable only for the proportion of liability it has underwritten. An Insurer is not jointly liable for the proportion of liability underwritten by any other Insurer. Nor is an Insurer otherwise responsible for any liability of any other Insurer that may underwrite this contract.
>
> The proportion of liability under this contract underwritten by a[n] Insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.
>
> In the case of a Lloyd's syndicate, each member[2] of the syndicate (rather than the syndicate itself) is an Insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other Insurer that may underwrite this contract.
>
> . . .

---

[2] The terms "member" and "name" are synonymous. *See Osting-Schwinn*, 613 F.3d at 1083 ("'Names' or 'members,' assume the risk of insurance loss.").

> Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

*Id.* at 32.

On February 14, 2024, Brit learned that a fire occurred at Location 7. Flytec advised Brit that more than $60 million of inventory stored at Location 7 had been destroyed and that the value of all the inventory at Location 7 was more than $130 million.

### C. This Action

On September 6, 2024, Brit filed this action seeking to rescind the Marine Policy based on Flytec's purported material misrepresentations in the Application. [ECF No. 1]. The Complaint sets forth claims for (1) *Uberrimae Fidei*[3] (Counts I–III); (2) Statutory Rescission (Counts IV–VI); (3) Common Law Rescission (Counts VII–IX); and (4) Declaratory Judgment (Count X). For Counts I through IX, Brit alleges that it is entitled to void the Marine Policy *ab initio*.

Flytec now moves to dismiss the Complaint and compel joinder of the seven other underwriters who subscribed to the Marine Policy. [ECF No. 12]. In addition, Flytec contends that Brit must provide a more definite statement concerning its standing to seek rescission of the Marine Policy on behalf of Syndicate No. 2987.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(7) allows a party to move to dismiss for failure to join a required party under Rule 19. Courts conduct a two-part inquiry to determine whether a party is indispensable. "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must

---

[3] According to Brit, marine insurance policies are subject to the doctrine of *uberrimae fidei*, the duty of utmost good faith.

4

inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Santiago v. Honeywell Int'l*, 768 F. App'x 1000, 1004 (11th Cir. 2019) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003)).

"The first part of the two-part Rule 19 analysis focuses on whether a party is a required party . . . ." *Id* (internal citation omitted). "Generally, an absent party is not required simply because its joinder would be convenient to the resolution of the dispute." *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1266 (M.D. Fla. 2014). Instead, an absent party is required when (A) "in that person's absence, the court cannot accord complete relief among the existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). If the court determines that the absent party is required, it "must order that the person be made a party" if feasible. Fed. R. Civ. P. 19(a)(2). "Conversely, if the court determines the absent party is not required under Rule 19(a), the lawsuit continues." *It's a New 10, LLC v. Harris,* No. 18-CV-62741, 2019 WL 451205, at *2 (S.D. Fla. Feb. 5, 2019).

### III.  DISCUSSION

#### A.  Joinder Is Not Required

Flytec argues that the other underwriters to the Marine Policy are indispensable parties under Rule 19(a) and must be joined. In making this argument, Flytec relies primarily on the general proposition that, in most circumstances, all the parties to a contract are indispensable in rescission actions. *See e.g. Klohr v. Mid-Continent Excess and Surplus Ins. Co.*, No. 18-80761, 2019 WL 2060024, at *2 (S.D. Fla. Mar. 14, 2019) ("Courts in this District routinely hold that

parties to a contract are indispensable in actions involving claims for reformation or rescission."). However, all but one of the cases cited by Flytec do not involve contracts formed in the Lloyd's insurance market.[4] Because of the unique structure of the Marine Policy and the Lloyd's market, the Court finds that joinder of the other underwriters is not required.

As detailed above, "[s]everal liability is fundamental to the Lloyd's structure." *Osting-Schwinn*, 613 F.3d at 1091. As a result, "the legal relationship between the Names and the insured is a vertical one: it is the individual Names, not the syndicate, who are directly liable in the event of loss, as if each Name had a contract with the insured." *Id.* "Indeed, the very essence of a Lloyd's policy is that it is a collection of individual contracts running between the insured and each Name." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 864 (5th Cir. 2003). This is clear by the language of the Marine Policy itself:

> A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other Insurer that may underwrite this contract. . . . *Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.*

[ECF No. 1-1 at 32] (emphasis added). In effect, the Marine Policy is a series of contracts between Flytec and the eight different members. Brit's contract with Flytec represents 15% of the total insured risk. *See Corfield*, 355 F.3d at 864 ("[A] Lloyd's policy is actually a collection of many bilateral contracts running between the insured and each Name.").

Based on the structure of the Marine Policy, the Cout finds that Brit may seek to rescind its contract with Flytec without joining the other underwriters. Accordingly, the Court can "accord

---

[4] Flytec cites one case involving Lloyd's underwriters—*Hiscox Dedicated Corporate Member, Ltd. v. Feld Entertainment, Inc.*, 580 F. Supp. 3d 206 (E.D. Va. 2022)—in which the court held that all the underwriters to a Lloyd's policy were required under Rule 19. However, the plaintiff in *Hiscox* sought only to rescind a tolling agreement, not the Lloyd's insurance policy. *Id.* at 210. Therefore, the issues are distinguishable.

complete relief" to Brit and Flytec—namely the rescission of Brit's 15% obligation to Flytec—without joining the other underwriters. Fed. R. Civ. P. 19(a)(1). Moreover, the other underwriters' interests will not be "impair[ed] or impede[d]" if they are not joined. *Id.* Indeed, their own bilateral contracts with Flytec remain.

Finally, Flytec is not a risk of incurring "inconsistent obligations." *Id.* Again, this action involves Brit's contract with Flytec, and the Marine Policy expressly provides that the members are severally liable. *See Brit v. Kaga, LLC,* No. 20-80385, 2021 WL 12095074, at * 4 (S.D. Fla. Mar. 8, 2021) (in action to declare Lloyd's policy void and that plaintiff had no duty to indemnify "[t]he court ha[d] no concern that a ruling would subject a non-party to a substantial risk of incurring increased or inconsistent liability [because] [s]ubscribing members remain severally liable for their proportional share of any judgment."); *Liberty Corp. Capital. Ltd. v. Steigleman*, No. 19-05698, 2020 WL 2097776, at *4 n. 5 (D. Az. May 1, 2020) ("Because the Names are severally liable, Liberty is not at risk of inconsistent obligations."). Therefore, the Court finds that the other underwriters are not required parties, and Flytec's motion to dismiss on this ground shall be denied.

### B. Plaintiff's Standing

Flytec has also moved for a more definite statement, arguing that Brit has not adequately alleged its standing to seek rescission of the Policy on behalf of Syndicate 2987. The Court disagrees. In the Complaint, Brit alleges that it "is the sole underwriting member for Syndicate 2987, which is the lead underwriter for the marine policy. Brit, through syndicate [] 2987, subscribed to 15% of the policy." [ECF No. 1 ¶ 8]. The Court finds, at this stage of the litigation, that these allegations are sufficient to show that Brit has standing to sue on behalf of Syndicate 2987.

IV.   **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint and Compel Joinder of Necessary Parties and for More Definite Statement [ECF No. 12] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of September, 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE